Semnar & Hartman, LLP
Babak Semnar, Esq. (#224890)
bob@sandiegoconsumerattorneys.com
Jared M. Hartman (#254860)
jared@ sandiegoconsumerattorneys.com
400 S. Melrose Drive, Suite 209
Vista, California 92081
Telephone: (951) 293-4187
Fax: (888) 819-8230

Attorneys for Plaintiff,
KIMI McSWAIN

# U.S. DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMI McSWAIN, an individual<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL CREDIT CONTROL AGENCY, INC.; and DOES 1-10;<br><br>Defendant. | Case No.: '16CV2036 H   JLB<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:**<br><br>1. **FEDERAL FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692, et seq.;**<br>2. **STATE OF CALIFORNIA ROSENTHAL ACT, CALIF. CIV. CODE § 1788, et seq.;** |

Plaintiff, KIMI McSWAIN, an Individual, by and through her attorneys of record, hereby complains and alleges as follows:

## INTRODUCTION

1. Plaintiff, by and through her attorneys of record, brings this action to secure redress from unlawful debt collection practices engaged in by Defendant NATIONAL CREDIT CONTROL AGENCY, INC. (hereinafter "NCCA") in violation

1
**COMPLAINT FOR DAMAGES**

of the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692-1692p (hereinafter "FDCPA") and the State of California Rosenthal Act, California Civil Code § 1788-1788.32 (hereinafter "Rosenthal" or "Rosenthal Act").

2. Plaintiff makes the allegations below on information and belief, with the exception of those allegations that pertain to Plaintiff personally, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4. In 15 U.S.C. § 1692(a)-(e), the U.S. Legislature made the following findings and purpose in creating the FDCPA:

> Abusive practices. There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
>
> Inadequacy of laws. Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
>
> Available non-abusive collection methods. Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.
>
> Interstate commerce. Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.
>
> Purposes. It is the purpose of this title [15 USCS §§ 1692 et seq.] to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

5. In Calif. Civil Code § 1788.1(a)-(b), the California Legislature made the following findings and purpose in creating the Rosenthal Act:

> (a)(1) The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.
>
> (2) There is need to ensure that debt collectors and debtors exercise their responsibilities to another with fairness and honesty and due regard for the rights of the other.
>
> (b) It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts of practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.

## JURISDICTION AND VENUE

4. This action arises out of Defendant's violations of the Federal FDCPA, over which the U.S. District Court has original subject matter jurisdiction pursuant to 15 U.S.C. section 1692k, 28 U.S.C. section 1331. The U.S. District Court has supplemental jurisdiction over all state law causes of action pursuant to 28 U.S.C. § 1367(a).

5. Because Defendant NCAA regularly conducts business within the County of San Diego, State of California by purposefully contacting residents therein for purposes of debt collection, personal jurisdiction is established.

6. Venue in this District is proper pursuant for the following reasons: (i) Plaintiff resides in the City of San Diego, County of San Diego, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant has conducted business within this judicial district at all times relevant.

## PARTIES & DEFINITIONS

7. Plaintiff is a natural person whose permanent residences is in the County

3
**COMPLAINT FOR DAMAGES**

of San Diego, State of California, and is therefore a "person" as that term is defined by California Civil Code § 1788.2(g) of the Rosenthal Act.

8. Plaintiff, as a natural person allegedly obligated to pay a consumer debt to Defendants, alleged to have been due and owing, is therefore both a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) of the FDCPA, and a "debtor" as that term is defined by California Civil Code § 1788.2(h) of the Rosenthal Act.

9. As a partnership, corporation, limited liability company, or other similar entity, Defendants therefore are "persons" within the meaning of California Civil Code § 1788.2(g) of the Rosenthal Act.

10. Defendant alleged that they were collecting upon an allegedly defaulted automobile loan that was issued to Plaintiff's mother, which Plaintiff allegedly co-signed for, and which was incurred for personal, household purposes. Therefore, Plaintiff is informed and believes that the money alleged to have been owed to Defendants originated from monetary credit that was extended primarily for personal, family, or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5) of the FDCPA and California Civil Code § 1788.2(d) of the Rosenthal Act.

11. Therefore, the money that Defendants were attempting to collect was a "consumer credit transaction" within the meaning of California Civil Code § 1788.2(e) of the Rosenthal Act.

12. Because Plaintiff, a natural person allegedly obligated to pay money arising from what Plaintiff is informed and believes was a consumer credit transaction, the money allegedly owed was a "consumer debt" within the meaning of California Civil Code § 1788.2(f) of the Rosenthal Act.

13. Plaintiff is informed and believes that Defendants utilize the instrumentalities of interstate commerce and the mails in a business for which the principal purpose is the collection of any debts; regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another or

4
**COMPLAINT FOR DAMAGES**

themselves; and are therefore "debt collectors" within the meaning of 15 U.S.C. § 1692a(6) of the FDCPA and California Civil Code § 1788.2(c) of the Rosenthal Act, and thereby engage in "debt collection" within the meaning of California Civil Code § 1788.2(b) of the Rosenthal Act.

## FACTUAL ALLEGATIONS

14. Sometime prior to August of 2015, Plaintiff purchased a vehicle from Penske Ford.

15. At the time of the purchase, Plaintiff provided Penske Ford with a check in the amount of $2,000.00 to be cashed on a future date. However, Penske Ford's ownership changed at that time, and Penske attempted to cash the check earlier than agreed upon and the check ultimately bounced and caused various fees to be incurred on Plaintiff's account.

16. Subsequently thereafter, Plaintiff provided Penske Ford with a check of $500.00, leaving a balance of $1,500.00.

17. Upon information and belief, Penske Ford retained the services of Defendant NCCA to collect upon the defaulted debt even though the debt was only created because Penske Ford attempted to cash the post-dated check earlier than agreed upon.

18. At some point thereafter, Defendant began contacting Plaintiff directly to collect upon the outstanding account.

19. After collection activity had commenced by Defendant, Plaintiff eventually settled the balance of the account with Defendant, and Plaintiff has since performed in full by paying the entire amount stipulated to be paid by Plaintiff to Defendant.

20. Prior to entering into a settlement agreement, by letter dated August 17, 2015 that was signed by collection manager Greg Price, Defendant contacted Plaintiff to inform her that the account had been assigned to Defendant's office for collection, and which letter also alleged that Plaintiff owed $1,500.00 plus $85.48 in interest.

21. However, Defendant's August 17, 2015 collection notice does not state

that interest is accruing and does not specify at what rate and frequency interest is accruing.

22. Furthermore, Defendant's August 17, 2015 collection notice fails to indicate on what date the interest amount of $85.48 had accrued, which is confusing and misleading because it is not clear as to whether the $85.48 interest amount had already accrued or was to be accrued at some point in the future.

23. Plaintiff was confused by this letter because Defendant failed to make it clear as to whether the $85.48 interest amount was the only interest Defendant was collecting or whether the amount changed daily due to additional interest.

24. By collection letter dated October 9, 2015, Defendant's collection manager Greg Price again sent a letter to Plaintiff in an attempt to collect upon the outstanding account.

25. Defendant's October 9, 2015 collection notice falsely threatens, "If you are concerned about your credit profile, you should take this matter very seriously. Once this account has been reported to Experian it *cannot* be removed!"

26. This is a completely false statement, as any creditor and any furnisher of credit information to Experian has the power and control to request that Experian delete any account information by simply submitting a form known as an "Automated Universal Data" form, otherwise known as "AUD", that simply has a check box for the creditor/furnisher to check and request the entire account to be deleted.

27. Moreover, Defendant's threat of negative credit reporting fails to inform Plaintiff that any negative credit reporting of a consumer account would only remain on her credit report for 7 years after 180 days had passed from the initial date of major delinquency.

28. As a result, Plaintiff was confused and misled, as she truly believed that negative credit reporting would remain permanent on her credit reports forever, whereas in reality they can only remain as a matter of law for 7 years after 180 days have passed from the initial date of major delinquency, and any credit reporting information can

6
**COMPLAINT FOR DAMAGES**

1 | easily be deleted upon request of the creditor/furnisher.

2 |     29. Furthermore, Defendant's October 9, 2015 collection notice claims that the amount of the debt is $1,610.50, but fails to indicate how that amount was reached after the August 17, 2015 collection notice letter claimed that the amount owed was $1,585.48.

    30. Defendant's October 9, 2015 collection notice failed to indicate if interest had accrued, if costs had been added, and what rate and frequency costs and/or interest had been added or would be added in the future.

    31. As a result, Plaintiff was confused by this October 9, 2015 collection notice because Defendant failed to make it clear as to whether interest and/or costs had accrued or was to be accrued at some point in the future.

    32. At some point thereafter, Plaintiff wrote a check to Defendant in the amount of $2,000.00, but unfortunately Plaintiff inadvertently mismanaged her finances and when Defendant attempted to deposit the check she did not have sufficient funds in her account and the check bounced.

    33. Plaintiff did not know her financial account would not contain sufficient funds at the time Defendant deposited the check, as she inadvertently mismanaged her finances.

    34. Plaintiff did not intend to cause the check to bounce, and Plaintiff did not have any fraudulent intent when she drafted and delivered the check.

    35. Nevertheless, after the check bounced, Defendant's collection manager Greg Price wrote another collection letter to Plaintiff dated October 20, 2015 that showed Defendant had increased the balance allegedly due upon the account by $1,500.00 as damages under the statutory provisions that permit such statutory damages—three times of the amount drafted on the check, but capped at $1,500.00—when someone intentionally and fraudulently drafts a check with knowledge that the account drawn therefrom had insufficient funds.

    36. Defendant's letter claims that a court could determine that Plaintiff had a
7
**COMPLAINT FOR DAMAGES**

1 good faith dispute with the payee and thereby not order the statutory damages.

2     37. However, despite this attempt to provide Plaintiff with notice of her rights,
3 Defendant still included the $1,500.00 amount of statutory damages in the total amount
4 due, and thereby claimed that Plaintiff now owed a total of $3,006.74.

5     38. Because a court or jury had not yet determined the disputed fact as to
6 whether Plaintiff intentionally wrote the check with knowledge that the account had
7 insufficient funds, Defendant therefore could not collect the statutory damages amount.

8     39. As a result, Defendant misled and confused Plaintiff as to the amount that
9 was truly owed upon the account.

10     40. Furthermore, Defendant's October 20, 2015 collection notice again failed
11 to indicate if interest had accrued to the principal, if costs had been added to the
12 principal, and at what rate and frequency costs and/or interest had been added or would
13 be added in the future.

14     41. As a result, Plaintiff was confused by this October 20, 2015 collection
15 notice because Defendant failed to make it clear as to whether interest and/or costs had
16 accrued or was to be accrued at some point in the future.

17     42. At some point thereafter, on or about October 20, 2015, Plaintiff had a
18 telephone conversation with Defendant's collection manager, Greg Price, during which
19 Price scolded Plaintiff and raised his voice at her and called her an "idiot".

20     43. By scolding her, raising his voice at her, and calling her an "idiot" over the
21 telephone, Defendant's collection manager caused Plaintiff to feel embarrassment, to
22 feel belittled, to experience a significant shock to her sense of self-worth and self-
23 confidence.

24     44. Upon information and belief, Greg Price scolded Plaintiff, raised his voice
25 at her, and called her an "idiot" with the intention of causing her to feel harassed and
26 oppressed to the point where she would give in to his display of power and control and
27 pay him what he was demanding that she pay.

28     45. During this telephone conversation, Plaintiff hung up on Defendant's

collection manager Greg Price and communicated to him her desire that he stop contacting her.

46. However, Greg Price promptly called her back in complete and deliberate disregard of her desire that he stop contacting her.

47. Upon information and belief, Defendant's collection manager Greg Price's conduct in calling Plaintiff promptly after she hung up on him was a means of attempting to contact her at a time and in a place known, or should have been known, that was not convenient to Plaintiff.

48. Upon information and belief, Defendant's collection manager Greg Price's conduct in calling Plaintiff promptly after she hung up on him was a means of attempting to contact her in such a manner as to cause intimidation and oppression of Plaintiff.

49. By calling Plaintiff back after she hung up on him and communicating her desire that he stop contacting her, Defendant's collection manager caused Plaintiff to feel embarrassment, to feel belittled, to experience a significant shock to her sense of self-worth and self-confidence.

50. By letter dated November 2, 2015, Plaintiff sent a letter to Defendant and Greg Price that stated, "If you would have controlled your anger and acted professionally on the phone, and not called me an idiot, perhaps you would have heard what I said. I never once said I would not pay this debt. Please stop sending me harassing letters."

51. Neither Defendant nor Greg Price ever once denied calling Plaintiff an idiot, despite having received Plaintiff's November 2nd letter and thereby having the opportunity to deny calling her an idiot.

52. Plaintiff also sent a check in the amount of $100.00 as a good faith effort to make a payment upon the account.

53. By letter dated November 25, 2015, Defendant's collection manager Greg Price claimed that Plaintiff now owed $3,127.81 upon the account.

9
**COMPLAINT FOR DAMAGES**

54. However, Defendant's November 25th letter fails to include an explanation of how the $3,127.81 amount was calculated, and in so doing Defendant failed to indicate if interest had accrued to the principal, if costs had been added to the principal, and at what rate and frequency costs and/or interest had been added or would be added in the future.

55. As a result, Plaintiff was confused by this November 25th letter because Defendant failed to make it clear as to whether interest and/or costs had accrued or was to be accrued at some point in the future.

56. Defendant's November 25th letter was sent to Plaintiff in complete and deliberate disregard of her request in her November 2nd letter that Defendant stop sending her letters.

57. At some point thereafter, Defendant returned the $100.00 check to Plaintiff, uncashed, as a means of rejecting the only amount that Plaintiff could afford to pay.

58. Along with returning the $100.00 check, Defendant's collection manager Greg Price also sent a letter to Plaintiff dated December 3, 2015 that stated her "payment in the amount of $100.00 is completely unacceptable."

59. Also in the December 3rd collection letter, Defendant's collection manager Greg Price accused her of not "communicating like an adult".

60. By attacking her personally in their December 3rd letter and claiming she failed to "communicate like an adult", Defendant's collection manager caused Plaintiff to feel embarrassment, to feel belittled, to experience a significant shock to her sense of self-worth and self-confidence.

61. Through the entire course of harassment launched by Defendant's collection manager Greg Price, Plaintiff felt helpless, oppressed, and trapped under Defendant's oppression.

62. At some point, Plaintiff finally retained the services of an attorney and successfully negotiated a final amount to pay the outstanding balance upon the account,

which Plaintiff has dutifully done.

63.  As a direct result of Defendant's warfare of harassment explained above, Plaintiff suffered mental anguish by way of loss of sleep, nervousness, anxiety, crying, and fear.

64.  Defendant's collection manager Greg Price was, at all times described above, acting on behalf of, at the direction of, and in association with Defendant, and was at all time acting in his capacity as an employee of Defendant, and therefore all legal violations committed by Greg Price flow through as *respondeat superior* to Defendant.

## FIRST CAUSE OF ACTION
## (VIOLATIONS OF FDCPA)
## 15 U.S.C. §§ 1692-1692p

65.  Plaintiff re-alleges and incorporates by reference the above paragraphs, as though set forth fully herein.

66.  Through its conduct above, Defendant has committed the following violations of the FDCPA:

   a. Engaged in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d;

   b. Engaged in false, deceptive, or misleading representation or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e;

   c. Falsely represented the amount, the character, and the legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A);

   d. Used false representations and deceptive means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692e(10);

   e. Engaged in unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f of the FDCPA; and

   f. Collected amounts not authorized by the agreement and not authorized by

law in violation of 15 U.S.C. § 1692f(1).

67. As a result of each and every violation of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. section 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. section 1692k(a)(2)(A) and reasonably attorneys' fees and costs pursuant to 15 U.S.C. section 1692k(a)(3).

## SECOND CAUSE OF ACTION
## (VIOLATIONS OF ROSENTHAL ACT)
## CAL. CIV. CODE §§ 1788-1788.32

68. Plaintiff re-alleges and incorporates by reference the above paragraphs, as though set forth fully herein.

69. By violating the FDCPA, as identified the First Cause of Action above, Defendant has also necessarily violated the Rosenthal Act via Calif. Civil Code § 1788.17, as the Rosenthal Act has incorporated each of those provisions of the FDCPA.

70. As a result of each and every violation of the Rosenthal FDCPA, Plaintiff is entitled to actual damages pursuant to California Civil Code section 1788.30(a); statutory damages under 1692k(a)(2)(A) which is incorporated by California Civil Code section 1788.17; statutory damages for a knowing or willful violation in the amount of up to $1,000.00 pursuant to California Civil Code section 1788.30(b); and reasonable attorney's fees and costs pursuant to California Civil Code section 1788.30(c).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages from Defendant as follows:

- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in the amount of $25,000.00, or as the jury may allow;

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3);
- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);
- An additional award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), as incorporated into the Rosenthal Act via Calif. Civ. Code §1788.17, which is cumulative and in addition to all other remedies pursuant to California Civil Code § 1788.32;
- An award of actual damages pursuant to California Civil Code § 1788.30(a), in the amount of $25,000.00, or as the jury may allow;
- An award of costs of litigation and reasonable attorney's fees pursuant to Cal. Civ. Code § 1788.30(c);

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and hereby demands, a trial by jury.

Dated: 8-8-16                                              Respectfully submitted,

SEMNAR & HARTMAN, LLP

By:   /s/ Jared M. Hartman_____
Jared M. Hartman, Esq.
Attorney for Plaintiff